THE PEOPLE OF THE STATE OF NEW YORK ex rel. LOTT DELANEY, Relator, *v.* THE BOARD OF FIRE COMMISSIONERS OF THE VILLAGE OF SARATOGA SPRINGS and Others, Respondents.

*Saratoga Springs — power of its fire commissioners — they may employ a fireman to be paid out of a future tax levy — repeal of a statute by implication.*

The provisions of chapter 322 of the Laws of 1887, amending the charter of the village of Saratoga Springs, creating a board of fire commissioners, are not affected by that section of the village charter (§ 61 of chap. 226 of 1866), which provides that no debt shall be incurred or created by any officer of the village, in his official capacity, until the money or tax for that specific object shall have been voted or levied as directed by the charter.

The fire commissioners of the village, provided they do not incur within a year liabilities beyond the amount of the fire fund created by the act of 1887, may control the appropriation of the funds of the fire department by a resolution, employing necessary officers and men, although such resolution is adopted before the tax is levied by the village for the fire fund. It is not a ground for the discharge, by the board of fire commissioners of the village, of a fireman that, at the time of the passage of a resolution appointing him, all the moneys to the credit of the fire fund in the hands of the village receiver of taxes were anticipated and appropriated for the salaries of existing employees and for other expenses.

CERTIORARI issued out of the Supreme Court, and attested on the 17th day of June, 1895, directed to the board of fire commissioners

of the village of Saratoga Springs and to the members of said board, directing them to certify and return to the clerk of the county of Saratoga their proceedings in the premises, with the dates and the record thereof, and all and singular the resolutions, contracts, notes of acceptance, appointments and other papers, records or minutes of any kind, bulletins or notices posted by the chief engineer under their direction relative to the appointment, discharge, removal, suspension or notice of the further declination to receive services by them relative to any of the permanent firemen or employees of said board for the year 1895, and especially the relator, and also what, if any, charges were made against the relator, and, if any, how made and what opportunity for a hearing thereon was given to him, and what instructions were given to the chief engineer of the department in regard to the relator in the month of June, 1895, and prior to this date, and by whose orders and authority a notice dated June 8, 1895, and purporting to be signed by such engineer by order of said board, was made and posted, together with all records, minutes, resolutions and proceedings in regard to the relator's appointment and removal or discharge as a permanent fireman for the year beginning May 1, 1895, which occurred at the meetings held May 19, 1895, and June 7, 1895, to the end that such decisions, proceedings and actions relative to his appointment, discharge or removal as such employee or permanent fireman might be reviewed and corrected on the merits by the court.

*McCall & Brusnihan,* for the relator.

*A. W. Shepherd,* for the respondents.

PUTNAM, J.:

By chapter 322, Laws of 1887, amending the charter of the village of Saratoga Springs (Chap. 220, Laws of 1866), a board of fire commissioners was created for said village. The act provided, among other things, that said commissioners should control the expenditure of all funds belonging to the fire department, should have power to employ a clerk, chief engineer, assistant engineer, superintendent of the fire alarm telegraph and four or more firemen, and have the entire and exclusive management and control of all apparatus for the extinguishing of fires in said village, and of all property

belonging to or intended to be used by the fire department thereof. The act further provided that the compensation of said engineer, assistant engineer, superintendent of the fire alarm telegraph and firemen should be paid out of the funds of the fire department, and that such employees might be removed by said commissioners, but not without cause and only after having a reasonable opportunity to be heard.

By the charter of said village the trustees thereof are authorized to raise by an annual tax, to be levied in June of each year, for the use of the fire department, the sum of $7,000, and if necessary, in their discretion, a further sum of $1,000, this $7,000 or $8,000 constituting the fire department fund, and the village having no power to raise any other or greater sum; but chapter 322, Laws of 1887 (*supra*), provides that all penalties for infractions of by-laws enacted by the fire commissioners, and all sums required by law to be paid as taxes by incorporated fire insurance companies, shall be added to the fire department fund.

On March 19, 1895, the relator was appointed fireman by a resolution of said fire commissioners for one year from May 1, 1895, at a salary of $600, payable monthly. The commissioners at the same time appointed, for the said period, a chief engineer, superintendent of the fire alarm telegraph, a clerk and nine other firemen. On March twentieth the relator accepted said appointment and acted thereunder until June 7, 1895, when the board of fire commissioners assumed to discharge him. Relator was not removed for cause, or on charges, or after an opportunity to be heard, but on the sole ground, as stated by the respondents in the return, that on March nineteenth, when he and the other employees were appointed, no money or tax for the fire department fund for the ensuing year had been voted or levied either for salaries of employees or other expenses of the department.

That there was only $1,762.18 to the credit of the fire fund in the hands of the receiver of taxes, which sum was then anticipated and appropriated for the salaries of the then employees and for other expenses; that by the employment of relator and others on the 19th of March, 1895, the fire commissioners attempted to incur a debt or expenditure of $7,800 in violation of the express provisions of section 61 of the charter of said village, which provides that

"No debt shall be incurred or created by said village, by the trustees or any other officer thereof in their official capacity; * * * nor shall any expenditure be made or incurred until the money or tax for that specific object shall have been voted or levied as herein directed;" that the contract made or assumed to be made with the relator on March nineteenth was void, and hence that the respondents disregarded it, and the services of relator were dispensed with because no legal contract of employment existed with him.

It is not suggested that relator and the other employees so appointed on March 19, 1895, were not in fact necessary or required by the fire commissioners in the performance of their duties under the act of 1887, but as there was no money unappropriated in the hands of the village receiver belonging to the fire department, and there being none levied or voted at the time, to pay the wages of the said employees for the ensuing year, respondents contend that the fire commissioners had no legal authority to appoint either said chief engineer, superintendent, secretary or firemen; that the commissioners should have awaited the levy of the taxes in June following.

If the contention of the respondents is correct, the fire department of the village in May, 1895, and until the levy of the taxes in June of that year, would have been disorganized and the village without fire protection, and it follows that if in the course of any year after the levy of the annual tax in June the fire fund, through any unusual or unforeseen expenditure, should be exhausted, the commissioners would be unable to employ firemen necessary to do the work until the ensuing June.

With some hesitation we have reached the conclusion that the position taken by the respondents cannot be sustained. We think that the act of 1887 shows an intent to confer upon the fire commissioners power, at any time, to employ men when necessary and proper to keep the fire department in an efficient condition. They have absolute control of the expenditure of the funds belonging to the fire department. They are given the absolute right to appoint firemen. Under the act we see no reason to doubt that they may in any year control the appropriation of the funds of the department by a resolution adopted before as well as after the tax is levied. The control of the expenditure of the funds of the fire department

given to the fire commissioners is unqualified. An examination of the whole act shows an intent to confer upon them such power as is necessary to keep the fire department in an efficient state. We think their power is not restricted by section 61 of the charter, but only restricted by the provisions of the act of 1887 itself. That act provides that the compensation of officers and employees of the fire department shall be payable out of the fire fund. This fund, as we have seen, is a sum not exceeding $8,000, which the trustees of the village may levy annually, together with the amount received from the annual tax on incorporated insurance companies and certain penalties. The commissioners, under the statute, cannot incur in any year a liability beyond the amount of said fire fund. Should they assume to do so, their act would be without authority. But to that extent they can legally contract without regard to the provisions of section 61 (*supra*). Had the respondents made it appear that the employment of relator and others on March 19, 1895, created a liability beyond the amount authorized by the statute of 1887, it may be that they would have been authorized to discharge relator. But his dismissal was not placed on that ground in the return of the respondents, but on the sole ground that his employment was in violation of the provisions of section 61 (*supra*).

We think that the doctrine established in the case of *The People ex rel. Hiram Owen et al.* v. *Arthur D. Leary et al.* (17 Wkly. Dig. 116); approved in *Mingay et al.* v. *Hanson et al.* (102 N. Y. 695), as to the water commissioners of said village, applies. In the case cited it was held " That under the Laws of 1872, chapter 763, a new department was organized under the control of water commissioners, who have the power to manage and control, repair, make alterations and use all necessary precautions for the preservation and security of the water works. The commissioners receive and expend the income and rents derived from the water works in the discharge of their duties. The statute, as a whole, indicates a power in the commissioners quite independent of the trustees, and confers upon them all the power before that time possessed by the trustees of the village. The trustees have no control over the funds derived from the water works which are to be expended by the commissioners in the discharge of their duties under the law. Undoubtedly the

water commissioners are officers of the village, which is liable for their acts done within the authority conferred by the laws. But they are officers to whom powers are given in excess of the powers given to the officers of the village under the charter of 1866. As to such officers and such powers the restriction of section 61 is by implication and of necessity repealed."

It will be seen that the case cited is quite similar to this. In that case the powers of the water commissioners of the village of Saratoga Springs to incur a debt was considered, and it was held that the water commissioners were not restricted by the provisions of section 61 of the charter. Here, as in that case, a new department was made by the act of 1887, creating a board of fire commissioners. Such board controls the property belonging to the fire department and the expenditure of funds thereof. Although the fire commissioners are officers of the village, powers are conferred upon them by the act in excess of the powers theretofore possessed by the trustees under the charter. It is true that it appears in the case cited that the water commissioners received the greater part of the funds used by them from water rents entirely under their control, while the greater part of the fire department fund is raised by a tax levied by the trustees of the village. But the act of 1887 provides that the fire commissioners shall control the expenditure of the funds of the fire department, and hence the trustees, after levying the tax for the fire fund, have no more control over it than they have over the water fund received from water rents by the water commissioners of said village.

On the whole we think, as held in the case cited as to the water commissioners, that as to the fire commissioners and the powers conferred upon them by the act of 1887, the restriction of section 61 of the charter is repealed by implication as well as by the express enactment contained in section 5 of the act.

The case of *Latham* v. *Richards* (12 Hun, 360), to which we are referred by the learned counsel for the respondents, is not parallel. There the trustees of the village of Saratoga Springs assumed to create a debt for a large amount in the purchase of a farm for a cemetery, no money or taxes for that specific object having been voted. In that case there was a plain attempt to violate the provisions of section 61 of the charter. No subsequent statute had, by

implication or otherwise, repealed section 61 of the charter, which was, therefore, applicable, and hence the contract attempted to be made by the trustees was void. In the case under consideration an act passed subsequent to the act of 1866, creating a new department, authorized the fire commissioners to make the contract with relator under which he claims, and if the latter act is inconsistent with the provisions of section 61 of the said charter that section must be deemed repealed *pro tanto.*

We conclude that the relator is entitled to judgment, with the usual costs.

MAYHAM, P. J., and HERRICK, J., concurred.

Proceedings of commissioners reversed, with costs and disbursements.